## Lavin's License

*Abraham J. Levinson*, for appellant.

*J. Myron Shimer*, for Pennsylvania Liquor Control Board.

Bok, P. J., August 6, 1940.—This liquor license was suspended for 30 days because of two sales to officers for consumption off the premises.

The licensee has filed a brief and makes the point that the court of quarter sessions acts in these cases as though hearing an appeal from a magistrate. I am inclined to think there is confusion of thinking on this point, or may be. The case of Commonwealth v. Cronin, 336 Pa. 469 (1939), is urged upon me to support the licensee's view. That was a case that went up from the action of a common pleas court upon the revocation of an automobile operator's license, and the Supreme Court held that the hearing before the court of common pleas was de novo. It also held that there was a right of appeal to the Supreme Court.

I do not doubt that the hearing of a liquor case before the court of quarter sessions is also de novo, that the court should hear or examine the evidence. But the court is

also the court of last resort in these cases, and its function is that of both a nisi prius and an appellate tribunal. The real point is how each quarter sessions judge approaches a liquor case, and it is a pity there is no uniformity of view.

There is, however, also the point of how the cases approach a quarter sessions judge. In the one now before me there are 12 pages of testimony shorter than legal cap size. Two officers went in on two occasions and bought wine and whiskey in bottles to take away with them. The licensee was not present. The licensee says she instructed her people not to sell that way and knows nothing of the two transactions. The employes who made the sales were not called.

The impression I get from this is that the sales were made and that the licensee has appealed because she thinks there is a chance I will not be as hard on her as the Liquor Control Board was. In short, I am not asked to decide a disputed issue of fact but to say, "O well, I guess 30 days is too much. I'll cut it in half because the weather is pleasant and it's her first offense."

This does not appeal to me as a satisfactory way to decide a case. A good deal of a judge's work must depend on his innate sense of what is fair and just. I think I should act as an appellate court in most liquor cases. I think the obvious intention of the legislature was to create a special organization to hear and decide such matters, not as a master but as a semi-judicial body. I think it should be let alone unless it abuses its discretion, as when it has little or no evidence to go on or imposes an unconscionable and capricious punishment. I think the board is in a better position than I am to judge what punishment is proper; it is constantly in touch with the liquor problem throughout the city; it knows the human situation and feels the pressure. Consequently it has better opportunity than I have to erect standards.

There are cases I can imagine which are bitterly contested which may be brought to me so that I can see the

witnesses and decide for myself on which side the little vital thread of justice runs. It is my obvious duty to prevent injustice, but injustice is a state of mind reflected upon facts and conditions, and I cannot recognize it in a case where I feel in my conscience that I might reasonably impose the same punishment, even though I might be inclined toward a lesser one on the facts before me. The board should, in my opinion, be free to act within the limits of my own reason and conscience, with allowance made in its favor for its greater pragmatic knowledge of conditions.

I feel there is no injustice here.

The appeal is dismissed.