## Commonwealth v. Rose

*Archie C. Voorhies*, for appellant.
*Emrys G. Francis*, for Commonwealth.

ROWLEY, P. J., December 22, 1949.—This matter is before the court upon appeal of A. J. Rose from an order of the Secretary of Revenue suspending the license of the former to operate a motor vehicle for a period of 90 days. The suspension is based upon a charge that applicant violated the law which limits the rate of speed at which a motor vehicle may be operated on a highway.

The matter was heard on September 6, 1949, at which time counsel desired an opportunity to file briefs. Through misapprehension of opposing counsel, the matter was not resubmitted to the court until December 5, 1949.

Authority of the secretary to suspend the license rests upon the Act of June 27, 1939, P. L. 1135, sec. 9, 75 PS §192, which provides, inter alia:

"(b) The secretary may suspend the operator's license or learner's permit of any person, after a hearing before the secretary or his representative, whenever the secretary finds upon sufficient evidence: . . .

"2. That such person has committed any violation of the motor vehicle laws of this Commonwealth."

The Vehicle Code of May 1, 1929, P. L. 905, as last amended by the Act of June 5, 1947, P. L. 399, 75 PS §501, declares it unlawful to operate a motor vehicle upon the highway at a rate of speed in excess of 50 miles per hour (excepting vehicles upon highways under the supervision of a Turnpike Commission).

On March 6, 1949, appellant, operating his automobile on State Highway Route 19 in Crawford County, Pa., was halted by an officer of the Pennsylvania State police, and informed that he was driving in excess of the lawful speed. Subsequently, without a hearing, appellant paid a fine and costs to a local justice of the peace upon a complaint which charged operation of a motor vehicle at an unlawful speed.

On June 14, 1949, appellant was accorded a hearing before a representative of the Secretary of Revenue upon the question of suspension of his operating privilege.

On June 22, 1949, the secretary suspended appellant's operating license for a period of 90 days from July 19, 1949.

On petition of licensee, this court on July 27, 1949, allowed an appeal from the action of the secretary and granted a supersedeas staying the suspension until final disposition.

At the hearing the Commonwealth offered in evidence a "Certificate of Speedometer Accuracy" for the purpose of establishing that the speedometer of the complaining officer had been tested as required by the statute. Appellant's counsel objected to the admission, declaring such would be in violation of appellant's right to be confronted by witnesses; however, appellant does not press the point in the instant brief.

The form of certificate prepared by the Department of Revenue requires that it be signed by the manager or person in charge of the establishment where the speedometer is tested, and also that it be signed by the person who makes the test. The instant certificate is signed by the person who presumably made the test; it is not signed by the manager. The imprint by rubber stamp of the name of the business establishment is not a signature. The deficiency is not now stressed by appellant.

### Findings of Fact

Briefly stated, the evidence established that appellant at four o'clock in the afternoon of March 6, 1949, operated his automobile for the distance of one mile at a speed of 65 miles per hour; the highway, at the time and place, was rather free of traffic; the motor of licensee's car was "missing". "It continued to miss and

jerk, especially in starting and (at) low speed"; the operator was endeavoring to find a service station.

Appellant is vice president in charge of sales of the Greenville Steel Car Company, and is required to travel extensively, often upon brief notice, to many points to which there is not adequate service by railroad.

Appellant is now solely responsible for sales of his company products, an assistant in the sales department having recently suffered a cerebral hemorrhage.

The company employs some 800 workmen. It is a matter of common knowledge that the factory has recently virtually closed for lack of sales of its product.

Travel by motor vehicle is indispensable to appellant's full performance of his duties as sales manager.

At the hearing, counsel for the Commonwealth seemed to take the position that if convinced that the operator violated the statute, the court had no alternative but to suspend the license.

This precise point was presented to us at August term, 1940, no. 56, in the Court of Common Pleas of Venango County. In that case, the operator's license of John Budke, an attorney at law, was suspended for an undenied operation in excess of the lawful rate. We directed reinstatement of his license. The Commonwealth appealed the order to the Supreme Court. On the date for argument the Commonwealth abandoned its appeal, influenced presumably by the opinion in Handwerk Automobile License Case, 348 Pa. 263, that day filed by the Supreme Court. In the Handwerk case, supra, the Supreme Court said:

"The obvious intent of the legislature was to vest in the several courts of common pleas broad discretionary power. . . .

"In the exercise of the broad power thus conferred by the legislature, the courts are to administer justice according to the evidence and circumstances presented,

and the action of a lower court will not be disturbed except for manifest abuse of discretion."

The foregoing is wholly inconsistent with a limitation of the power of the court to the bare question whether the operator violated the statute.

The learned counsel for the Commonwealth cites Bureau of Highway Safety v. Wright, 355 Pa. 307, as authority for limiting the court's consideration to the determination whether the law was violated.

Counsel for the Commonwealth quotes the following from the Wright case:

"There must be a justifiable factual basis for the Court's action in the premises."

The Commonwealth's brief continues:

"We submit there is no factual basis for reinstating the driving license. We believe that the finding that there was speeding is inevitable from the evidence, and there is no suggestion to the contrary in the brief filed on behalf of Mr. Rose. Such findings necessarily operated to justify the suspension of the license." (Wright's case, supra.)

In our opinion, the Wright case merely declares that the court of common pleas may not "act either arbitrarily or capriciously with respect to the reinstatement of a suspended license."

The Handwerk case, supra, declares: "The courts are to administer justice *according to the evidence and circumstances presented.*" (Italics supplied.)

The Supreme Court will reverse the order of common pleas, in cases of this nature, only for an erroneous conclusion of law, or manifest abuse of discretion.

In the Wright case the trial court held that the suspension of the license constituted a second penalty, the operator having previously paid a fine. The Supreme Court said with respect to this: "The basis upon which the court below acted in the instant case was *erroneous as a matter of law.*" (Italics supplied.)

The trial court found that the operator had been guilty of reckless driving "without a suggestion of a single word in mitigation of the offense."

"The lower court's reinstatement of the license, in direct denial of its own relevant and supported findings, amounted to an abuse of discretion."

The Wright case does not in the least curtail the power and duty of the court " 'to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to *determine anew whether the operator's license should be suspended*". (Italics by the Supreme Court.) Handwerk Case, supra.

Much of the foregoing discussion was unnecessary to decision of the instant case. Nevertheless, we deem it appropriate to make known our disagreement with some of the principles here urged by the Commonwealth.

We were impressed by the apparent frankness of the operator, who did not deny that he had operated at the alleged speed. He stated that his attention was engaged by the uncertain performance of his engine and that he would not undertake to state his speed.

We are not a little impressed by the circumstance that the employment of some 800 workers is dependent upon fullest activity of appellant in furtherance of his duties as sales manager, especially so since his sole assistant has recently been incapacitated by sudden and serious illness.

The legislature has liberally permitted a maximum speed at the rate of 50 miles per hour. Such a rate is adequate for all rational purposes, and it is not the duty of those in authority to extend comfort to operators who drive in disregard of this limitation. It is a matter of common knowledge that a large proportion of highway accidents is chargeable to excessive speed in the operation of motor vehicles. It is obvious that the

fine prescribed for unlawful speed is not an effective deterrent.

The instant circumstances sharply precipitate the question whether a court is warranted in withholding its support of the efforts of the secretary to reduce the hazards of travel by automobile.

While we entertain no doubt of our authority, in a proper case, to reinstate a license notwithstanding a violation of the statute by the licensee, it seems to us that the Secretary of Revenue, by reason of his jurisdiction over highway traffic throughout the Commonwealth and his consequent familiarity with the problems involved, is ordinarily more competent than a common pleas judge to decide what circumstances warrant suspension.

There is widespread criticism of the multitude of serious accidents involving the operation of motor cars. We look to the Bureau of Highway Safety to ameliorate the situation. Little can be accomplished by that bureau without rational support of the courts. It seems to us that the general welfare of the citizens will be best promoted if the courts voluntarily limit the exercise of the power to overrule the decision of the secretary to those very few cases where the alleged violation is not established or where because of peculiar circumstances suspension would effect a hardship bordering on injustice.

In the instant case, the matter urged upon us as justification for reinstatement of appellant's operating license may be submitted to the Secretary of Revenue who will doubtless accord it consideration commensurate with its merits.

*Order*

And now, December 22, 1949, this matter came on for hearing upon appellant's appeal from an order of the Secretary of Revenue suspending his operator's license, and same was heard, whereupon it is ordered,

adjudged and decreed that the license of A. J. Rose to operate a motor vehicle upon the highways of the Commonwealth be suspended for a period of 90 days from and after January 16, 1950.